TRP/BAO/KMB                                              314-347-9-38-114

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EMCASCO INSURANCE COMPANY and EMPLOYERS MUTUAL CASUALTY COMPANY,<br>       Plaintiffs,<br>   vs.<br><br>CUSTOM MECHANICAL EQUIPMENT, INC., CUSTOM MECHANICAL EQUIPMENT OF WISCONSIN LLC, CUSTOM MECHANICAL EQUIPMENT LLC, and CE DESIGN, LTD., an Illinois Corporation,<br>       Defendants.<br>_____<br>CE DESIGN, LTD.,<br>     Counter-Plaintiff,<br><br>   vs.<br><br>EMCASCO INSURANCE COMPANY and EMPLOYERS MUTUAL CASUALTY COMPANY,<br>     Counter-Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.:  11 CV 1494-C |

## EMCASCO INSURANCE COMPANY and EMPLOYERS MUTUAL CASUALTY COMPANY MOTION AND BRIEF IN SUPPORT OF SUMMARY JUDGMENT

Plaintiffs-Counter Defendants, EMPLOYERS MUTUAL CASUALTY COMPANY ("EMC") and EMCASCO INSURANCE COMPANY ("EMCASCO"), by their attorneys, Cremer, Spina, Shaughnessy, Jansen & Siegert, LLC and Gibbs, Armstrong, Borochoff, Mullican, & Hart, P.C., move for summary judgment on Counts I, II, III and V of the Amended Complaint for Declaratory Judgment pursuant to Federal Rule of Civil Procedure Rule 56 and Local Rule 56.1.

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF UNCONTESTED MATERIAL FACTS | 1 |
| III. | ARGUMENT | 4 |
| A. | Summary Of Underlying Claims And Judgment | 6 |
| B. | The Subject Policies Do Not Provide Coverage For The Underlying Claims | 8 |
| 1. | No "bodily injury" or "property damage" caused by an "occurrence" is alleged in the underlying case | 9 |
| 2. | No "personal and advertising injury", "personal injury" or "advertising injury" is alleged in the underlying case | 12 |
| 3. | The Statutory Violation exclusion bars coverage | 15 |
| 4. | Other exclusions apply to preclude coverage | 19 |
| a. | The Expected or Intended Injury Exclusion | 19 |
| b. | The Knowing Violation of Rights of Another Exclusion | 20 |
| 5. | Damages alleged in the underlying case are outside the effective period of the 2006-07 Emcasco CGL policy and the 2006-07 EMC UL policy | 21 |
| 6. | TCPA statutory damages are punitive in nature and are not covered under the subject policies | 22 |
| 7. | In the Alternative, the class is made up of corporations and business entities that have no right to privacy | 23 |
| 8. | Additionally, CUSTOM is not "legally obligated to pay damages" in Judgment as required under Insuring Agreement | 25 |
| C. | CMEOW and CME do not qualify as "insureds" on the subject policies | 26 |
| IV. | CONCLUSION | 28 |

## TABLE OF AUTHORITIES

| | |
|---|---|
| FRCP 56.1(a) | 4 |
| *Emmanuel Baptist Church v. State Farm Fire & Cas. Co.*, 2012 WL 3595093 (W.D. Okla. Aug. 21, 2012) (not reported) | 5 |
| *American Economy Ins. Co. v. Bogdahn*, 2004 OK 9, 89 P.3d 1051 (Okla. 2004) | 5 |
| *May v. Mid-Century Ins. Co.*, 2006 OK 100, 151 P.3d 132 (Okla.2006) | 5, 6 |
| *Boggs v. Great Northern Ins. Co.*, 659 F.Supp.2d 1199, 1205 (N.D. Okla. 2009) | 5, 6 |
| *Redcorn v. State Farm Fire & Cas. Co.*, 2002 OK 15, 55 P.3d 1017, 1020 (Okla.2002) | 5-6 |
| *London v. Farmers Ins. Co., Inc.*, 2003 OK CIV APP 10, 63 P.3d 552, 554 (Okla.Civ.App.2002) | 6 |
| *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, 812 P.2d 372 (Okla. 1991) | 6 |
| *Wynn v. Avemco Ins. Co.*, 1998 OK 75, 963 P.2d 572 (Okla.1998) | 6 |
| *BP Amer., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 2005 OK 65, 148 P.3d 832 (Okla. 2005) | 6 |
| 47 U.S.C. § 227(b)(1)(C) (2006) | 7 |
| 47 U.S.C. § 227(b)(3) | 7 |
| 47 U.S.C. § 227(b)(3)(B) | 7 |
| *United States Fidelity & Guaranty Co. v. Briscoe*, 205 Okla. 618, 239 P.2d 754 (1951) | 10 |
| *Lutheran Benev. Ins. Co. v. Nat'l Catholic Risk Retention Grp., Inc.*, 939 F.Supp. 1506 (N.D. Okla. 1995) | 10 |
| *State Farm Gen. Ins. Co. v. JT's Frames, Inc.*, 181 Cal.App.4th 429, 104 Cal.Rptr.3d 573 (Cal.App.4th 2010) | 11, 13 20 |
| *ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal.App.4th 137, 53 Cal.Rptr.3d 786 (Cal.App.4th 2007) | 11, 14 |
| *Terra Nova Ins. Co. v. Fray-Witzer*, 449 Mass. 406, 869 N.E.2d 565 (Mass. 2007) | 11 |

| | |
|---|---|
| *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631 (4th Cir. 2005) | 11, 20 |
| *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.,* 432 F.Supp.2d 488 (E.D. Penn. 2006), aff'd by 503 F.3d 399 (3d Cir.2007) | 11, 14 20 |
| *Maryland Cas. Co. v. Express Products, Inc.*, CIV.A. 09-857, 2011 WL 4402275 (E.D. Pa. Sept. 22, 2011) (not reported) | 11, 14 |
| *Loman v. Freeman*, 229 Ill.2d 104, 890 N.E.2d 446 (Ill. 2008) | 12 |
| 815 ILCS 505/2 | 12 |
| *Telecommunications Network Design and Paradise Distributing, Inc. v. Bretheren Mutual Ins. Co.*, 10 PA Super. 155, 5 A.3d 331 (Pa. Super. Ct. 2010) | 13 |
| *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543 (7th Cir. 2009) (construing Iowa law) | 13, 20 |
| *St. Paul Fire & Marine Ins. Co. v. Brother International Corp.*, 319 Fed.Appx. 121 (3rd Cir. 2009) (unpublished) | 13, 20 |
| *ACE Rent-A-Car, Inc. v. Empire Fire & Marine Ins. Co.*, 580 F.Supp.2d 678 (N.D. IL 2008) (construing Indiana law) | 14, 20 |
| *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 2007 WL 564075 (W.D. Wash. 2007) (not reported) | 14 |
| *Hartford Fire Ins. Co. v. Flagstaff Industries, Corp.*, 2012 WL 1669845 (N.D. Ohio 2012) (not reported) | 14 |
| *McCormack v. Oklahoma Pub. Co.*, 613 P.2d 737 (Okla. 1980) | 15 |
| *LeFlore v. Reflections of Tulsa, Inc.*, 708 P.2d 1068 (Okla. 1985) | 15 |
| *Oregon Mut. Ins. Co. v. Rain City Pizza, LLC*, 172 Wash.App. 1043 (Wash.App. 2013) (unpublished) | 17 |
| *Collective Brands, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 2013 WL 66071 (D. Kan. 2013) | 17 |
| *GM Sign, Inc. v. Auto-Owners Ins. Co.*, 2012 WL 4840592 (Mich.App. 2012) (unpublished) | 17, 18 |

| | |
|---|---|
| *MDC Acquisition Co. v. North River Ins. Co.*, 898 F.Supp.2d 942 (N.D. Ohio 2012) | 17, 20 |
| *Rick's Cabaret International, Inc. v. Indemnity Ins. Corp.*, 2012 WL 208606 (S.D. Tex. 2012) (not reported) | 17 |
| *Massachusetts Bay Ins. Co. v. Gordon*, 708 F.Supp. 1232 (W.D. Okla. 1989) | 19 |
| *Kruse v. McKenna*, 178 P.3d 1198 (Colo. 2008) | 22 |
| *U.S. Fax Law Center, Inc. v. iHire, Inc.*, 362 F.Supp.2d 1248, aff'd 476 F.3d 1112 (10th Cir. 2007) | 22 |
| *Wagoner v. Bennett*, 1991 OK 70, 814 P.2d 476 (Okla.1991) | 22 |
| *Hamilton v. Amwar Petroleum Co., Inc.,* 1989 OK 15, 769 P.2d 146 (Okla.1989) | 22 |
| *Dayton Hudson Corp. v. Am. Mut. Liab. Ins. Co.*, 621 P.2d 1155 (Okla.1980) | 23 |
| *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357 (1950) | 24 |
| *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 94 S.Ct. 1494 (1974) | 24 |
| *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 109 S.Ct. 2909 (1989) | 24 |
| *FCC v. AT & T Inc.*, 131 S. Ct. 1177 (2011) | 24 |
| *S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.*, 186 Cal. App. 4th 383 112 Cal.Rptr. 3d 40 (6th Dist. 2010) | 24 |
| *Lida Mfg. Co., Inc. v. U.S. Fire Ins. Co.*, 116 N.C. App. 592, 448 S.E.2d 854 (NC App Ct 1994) | 26 |
| Fed. R. Evid. 902 | 27 |
| *United States v. Garcia*, 71 Fed.Appx. 781 (10th Cir. 2003) (unpublished) | 27 |
| Fed.R.Evid. 201(d) | 27 |
| *Vista Exploration Co. v. Mewbourne Oil Co.*, CIV-10-213-C, 2010 WL 1980196 (W.D. Okla. May 17, 2010) (unpublished) | 27 |

In support of their motion for summary judgment, EMC and EMCASCO state the following:

## I.    INTRODUCTION

This lawsuit is a declaratory judgment action concerning the availability of insurance coverage under certain policies of insurance issued to CUSTOM MECHANICAL EQUIPMENT, INC. ("CUSTOM") by EMCASCO and EMC (referred to collectively as "the Plaintiffs") for the claims asserted in an underlying lawsuit filed by defendant CE DESIGN, LTD ("CED").  The Plaintiffs contend that no insurance is owed to CUSTOM for the injuries alleged in the underlying case.  CED claims that insurance coverage is owed to CUSTOM for the settlement entered in the underlying case and that CED, as CUSTOM's assignee, is entitled to be indemnified for the judgment entered against CUSTOM in the underlying case.  Should this Court rule in favor of the Plaintiffs on Counts I, II, III, and V of the Amended Complaint for Declaratory Judgment, it will not be necessary to proceed on the remaining counts[1] in that pleading.

## II.    STATEMENT OF UNCONTESTED MATERIAL FACTS

The Plaintiffs' effective pleading (their Amended Complaint for Declaratory Judgment) is DN 71[2].  CED's Answer and Counterclaim is DN 72.  The Plaintiffs Answer to CED's Counterclaim is DN 74.  The Joint Status Report and Discovery Plan

---

[1] Pursuant to the Joint Status and Discovery Plan [DN 75], Alternative Count IV ("Notice Violation") and Alternative Count VI ("Reasonableness of the Settlement") were separated into Phase II of this lawsuit.  The Plaintiffs reserve their right to move for summary judgment on those counts, if necessary, during Phase II.

[2] When Plaintiffs cite documents that were previously filed with the Court, they will refer to the Court's docket number instead of attaching another copy of the document. All references to the Court's docket numbers will use the designation "[DN]".

filed by the Plaintiffs and CED is DN 75.  A Joint Stipulation Regarding Additional

Allegations to Amended Complaint for Declaratory Judgment filed by the Plaintiffs and

CED is DN 98.  These pleadings and stipulations establish the following facts.

      1.      On May 13, 2008, CED filed a lawsuit in the Circuit Court of Cook

County, Illinois entitled *C.E. Design, LTD., an Illinois corporation, individually and as*

*the representative of a class of similarly-situated persons v. Custom Mechanical*

*Equipment, Inc.; Custom Mechanical Equipment Of Wisconsin, LLC, and Custom*

*Mechanical Equipment, LLC*, that was assigned Case No. 08 CH 17478.  The lawsuit

described in the preceding sentence will be referred to as "the underlying case".  [DN 71,

p. 6, ¶22; DN 72, p. 16, ¶8; DN 71-7; DN 75, p. 4].

      2.      CUSTOM MECHANICAL EQUIPMENT LLC ("CME") and CUSTOM

MECHANICAL EQUIPMENT OF WISCONSIN LLC ("CMEOW") are identified as

defendants in the underlying case. As discussed below, the Plaintiffs do not concede that

CMEOW and CME are separate entities, or that CMEOW and CME were viable legal

entities at the time the underlying case was filed.  Furthermore, the Plaintiffs do not

concede that CMEOW and CME are insureds under the relevant insurance policies

(identified below).  CUSTOM, CME and CMEOW (when referred to collectively, "the

CUSTOM entities") failed to respond to the Amended Complaint filed in this case.  As a

result, this Court found all three entities in default on April 29, 2013.  [DN 105].

      3.      CED and the CUSTOM entities entered into a settlement agreement

regarding the underlying case. [DN 75, p. 4; DN 71-18].

      4.      On June 14, 2011, CED and the CUSTOM entities filed a Motion for

Preliminary Approval of Class Action Settlement Agreement and Notice to the Class in the underlying case. [DN 71, pp. 7-8, ¶27; DN 72, p. 3, ¶27; DN 71-17 - DN 71-24; DN 75, p. 4].

5.    On June 23, 2011, the judge in the underlying case entered an Order Preliminarily Approving the Class Action Settlement and Approving the Class Notice. [DN 71, p. 9, ¶33; DN 72, p. 3, ¶33; DN 71-27; DN 75, p. 4].

6.    On September 19, 2011, the judge in the underlying case entered the Final Approval of Settlement Agreement and Judgment. [DN 71, p.10, ¶36; DN 72, p. 3, ¶36; DN 71-28; DN 75, pp. 4-5].

7.    At that time, judgment was entered against the CUSTOM entities in the underlying case in the amount of $1,276,000.00. [DN 75, pp. 4-5].

8.    EMCASCO issued the following insurance policies containing Commercial General Liability to its named insured "Custom Mechanical Equipment, Inc.":

   a.    Policy no. 3D1-73-91-07 effective September 1, 2006-07; and
   b.    Policy no. 3D1-73-91-08 effective September 1, 2007-08.

These policies will be referred collectively when appropriate as "the Emcasco CGL policies." [DN 75, pp. 3-4]. Certified copies of these policies are attached to the Amended Complaint as Exhibits I [DN 71-9 - DN 71-10] and J [DN 71-11 - DN 71-12].

9.    EMC issued Commercial Umbrella Liability Policy No. 3J1-73-91-07 to its named insured "Custom Mechanical Equipment, Inc." for the effective period of September 1, 2006-07. This policy will be referred to herein as "the 2006-07 EMC UL policy." [DN 75, p. 4]. A certified copy of this policy is attached to the Amended

Complaint as Exhibit K. [DN 71-13 - DN 71-14].

10.     EMC issued Commercial Liability Umbrella Policy No. 3J1-73-91-08 to its named insured "Custom Mechanical Equipment, Inc." for the effective period of September 1, 2007-08.  This policy will be referred to herein as "the 2007-08 EMC UL policy." [DN 75, p. 4].  A certified copy of this policy is attached to the Amended Complaint as Exhibit L. [DN 71-15 - DN 71-16].

11.     Where appropriate, the insurance policies referred to above in paragraphs 8-10 will be referred to as "the subject policies."

12.     CUSTOM tendered its defense in the underlying case to EMCASCO. [DN 72, p. 20, ¶29; DN 74-11, ¶29; DN 75, p. 4].

13.     EMCASCO denied coverage to CUSTOM in connection with the underlying case under one of the CGL policies EMCASCO issued to CUSTOM.  [DN 72, p. 20, ¶30; DN 74-11, ¶30; DN 75, p. 4].

Based on these uncontested facts and a consideration of the policy provisions set forth below, this Court is able to conclude, as a matter of law, that the Plaintiffs had no duty to defend or indemnify the CUSTOM entities in the underlying case, and have no coverage obligations with respect to the judgment entered in the underlying case.

## III.   ARGUMENT

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FRCP 56.1(a).  The construction of an insurance policy and the determination of the rights and obligations thereunder are questions of law, which are appropriate subjects for disposition by way of

summary judgment. *Emmanuel Baptist Church v. State Farm Fire & Cas. Co.*, 2012 WL 3595093, *1 (W.D. Okla. Aug. 21, 2012) (not reported)[3].

The interpretation of the subject policies at issue in this case is governed by Oklahoma law.  The subject policies were negotiated in Oklahoma and issued to an Oklahoma company by an Oklahoma insurance broker.  [DN 71-9, p. 3; DN 71-11, p. 3; DN 71-13, p. 3; DN 71-15, p. 3].  Additionally, during the briefing on CED's Motion to Transfer Venue (filed in the Northern District of Illinois), CED expressly contended that Oklahoma law controls the interpretation of the insurance policies at issue here as a basis to secure transfer of this action to this forum.  See copy of CED's Joint Memorandum of Law in Support of their Motion to Transfer Venue Pursuant to 28 USC § 1404(a) attached hereto as **Exhibit A**, at pp. 10-12.   Thus, it is uncontested that Oklahoma law applies.

Oklahoma courts have instructed that an insurance policy is a contract that may be interpreted as a matter of law.  See *American Economy Ins. Co. v. Bogdahn*, 2004 OK 9, ¶9, 89 P.3d 1051, 1054 (Okla.2004).  "The rules of construction and analysis applicable to contracts govern equally insurance policies."  *May v. Mid-Century Ins. Co.*, 2006 OK 100, ¶22, 151 P.3d 132, 140 (Okla.2006).  Under Oklahoma law, the insurance contract should be construed according to the terms set out within the four corners of the document.  See *Boggs v. Great Northern Ins. Co.*, 659 F.Supp.2d 1199, 1205 (N.D. Okla. 2009) (citing *Redcorn v. State Farm Fire & Cas. Co.,* 2002 OK 15, ¶4, 55 P.3d 1017,

---

[3] For the convenience of the court, all unpublished and unreported cases outside Oklahoma that are cited in this motion are attached hereto in the attached Appendix.

1019 (Okla.2002) and *London v. Farmers Ins. Co., Inc.,* 2003 OK CIV APP 10, ¶7, 63

P.3d 552, 554 (Okla.Civ.App.2002)).   The Oklahoma Supreme Court has set forth the

following guidelines for interpreting insurance policies:

> The primary goal of contract interpretation is to determine and give effect
> to the intention of the parties at the time the contract was made.  In arriving
> at the parties' intent, the terms of the instrument are to be given their plain
> and ordinary meaning.  Where the language of a contract is clear and
> unambiguous on its face, that which stands expressed within its four
> corners must be given effect.  A contract should receive a construction that
> makes it reasonable, lawful, definite and capable of being carried into effect
> if it can be done without violating the intent of the parties. *May*, 2006 OK
> 100, ¶22, 151 P.3d at 140.

Thus, if the language of the insurance policy is clear and unambiguous, its terms

will be enforced.  See *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, 812 P.2d 372, 376 (Okla.

1991).  A court should not create an ambiguity in the policy by "using a forced or

strained construction, by taking a provision out of context, or by narrowly focusing on a

provision." *Boggs*, 659 F. Supp. 2d at 1205 (citing *Wynn v. Avemco Ins. Co.*, 1998 OK

75, ¶17, 963 P.2d 572, 575 (Okla.1998)).  Oklahoma courts "will not impose coverage

where the policy language clearly does not intend that a particular individual or risk

should be covered," and neither a "split in authority over whether a certain term is

ambiguous," nor "the fact that the parties disagree" alone is sufficient to establish an

ambiguity. *Boggs*, 659 F. Supp. 2d at 1205 (citing *BP Amer., Inc. v. State Auto Prop. &

Cas. Ins. Co.*, 2005 OK 65, ¶6, 148 P.3d 832, 835-36 (Okla.2005)).

## A.   Summary Of Underlying Claims And Judgment

CED's complaint in the underlying case alleged that on April 18, 2008, the

CUSTOM entities sent a telephone facsimile to CED without having permission to do so.

[DN 71, pp. 6-7, ¶23; DN 71-7, ¶¶11-14].  CED further alleged that the CUSTOM

entities sent similar telephone facsimiles to other recipients without having permission to

do so.  [DN 71, pp. 6-7, ¶23; DN 71-7, ¶¶15-16].  Based on those general allegations,

CED asserted the following claims in the underlying case against the CUSTOM entities:

Violation of the Telephone Consumer Protection Act ("TCPA") (47 USC § 227 *et. seq.*)

(Count I); Conversion (Count II); and violation of the Illinois Consumer Fraud and

Deceptive Business Practices Act (815 ILCS 505/2, *et. seq.*) (Count III).  [DN 71-7].

The TCPA makes it unlawful for any person to use any fax machine, computer or

other device to send unsolicited advertisements to another fax machine. 47 U.S.C. §

227(b)(1)(C) (2006).  The TCPA creates a private right of action permitting recipients of

unwanted fax advertisements to seek injunctive relief and monetary penalties.  47 U.S.C.

§ 227(b)(3).  The TCPA provides a plaintiff may recover its "actual monetary loss" from

a violation of the TCPA or may receive $500 for each such violation, whichever is

greater. 47 U.S.C. § 227(b)(3)(B).

The Judgment order in the underlying case indicates that the Judgment amount

was calculated based on the factual premise that "2,552 unsolicited faxed advertisements

were sent on [the CUSTOM entities] behalf to 2,552 persons between February 1, 2008

and April 30, 2008". [DN 71-28, p. 4, ¶9(e)].   The Judgment entered against the

CUSTOM entities was for $1,276,000 [DN 71-28, p. 6, ¶G].  That number was derived

by multiplying 2552 (the number of unauthorized faxes allegedly sent by the CUSTOM

entities) by $500 (the per violation monetary penalty allowed by the TCPA).

As explained below, the underlying case did not allege a claim for covered

damages.  Moreover, the subject policies contain a Statutory Violation exclusion and other exclusions that clearly bar coverage for the underlying claims.  As a matter of law, the Plaintiffs had no duty to defend the CUSTOM entities and have no obligation to indemnify any party in connection with the Judgment entered in the underlying case.

**B.**    **The Subject Policies Do Not Provide Coverage For The Underlying Claims**

The Emcasco CGL policies [DN 71-9 - DN 71-10 & DN 71-11 - DN 71-12] provide coverage pursuant to the Commercial General Liability Coverage Form, No. CG 00 01 12 04 ("the CGL coverage form")[DN 71-29].  The 2006-07 EMC UL Policy [DN 71-13 - DN 71-14] provides coverage pursuant to the Commercial Umbrella Coverage Form, No. CU 7002 (10-93) FST ("the CU 7002 coverage form")[DN 71-31], as amended by endorsement no. CU 7225 (3-00) [DN 71-32] and endorsement no. CU 7344 (10-01).  The 2007-08 EMC UL Policy [DN 71-15 - DN 71-16] provides coverage pursuant to the Commercial Liability Umbrella Coverage Form, No. CU 00 01 12 04 ("the CLU coverage form")[DN 71-35].

The CGL coverage form contains a Coverage A Section and a Coverage B Section.  The Coverage A Section is applicable in certain circumstances, subject to all terms, conditions and limitations of the Emcasco CGL policies, to "sums the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies".  The Coverage B Section is applicable in certain circumstances, subject to all terms, conditions, and limitations of the Emcasco CGL policies, to "sums the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies".

8

The 2006-07 EMC UL Policy (pursuant to endorsement no. CU 7225 (3-00) [DN 71-32]) is applicable in certain circumstances, subject to all terms, conditions and limitations of the 2006-07 EMC UL policy, to claims for Coverage A - "Bodily Injury", Coverage B - "Property Damage", Coverage C - "Personal Injury" or Coverage D - "Advertising Injury".

The CLU coverage form of the 2007-08 EMC UL policy contains a Coverage A Section and a Coverage B Section. [DN 71-35]. The Coverage A Section is applicable in certain circumstances, subject to all terms, conditions and limitations of the policy, to claims for "bodily injury" and "property damage". The Coverage B Section is applicable in certain circumstances, subject to all terms, conditions and limitations of the policy, to claims for "personal and advertising injury".

**1.   No "bodily injury" or "property damage" caused by an "occurrence" is alleged in the underlying case**

CED alleged the CUSTOM entities sent unsolicited faxes to others in violation of the TCPA. [DN 71-7, ¶¶1 & 2]. Those allegations do not complain of "bodily injury." The subject policies define "property damage" as follows:

**a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or**

**b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. \*\*\***
[DN 71-29, pp. 14-15; DN 71-33, p.1; DN 71-35, p.17].

Oklahoma courts have not addressed the issue of whether an alleged TCPA violation is covered under the "property damage" provisions of a standard CGL policy.

The Plaintiffs submit that it is not.  An alleged TCPA violation does not seek to recover for a physical injury; it seeks to recover for irritation and inconvenience.  Even if the underlying claims can be construed as seeking to recover for "property damage", under the terms of the subject policies, "property damage" must be caused by an "occurrence" in order for coverage to exist.  As applied to "property damage", all of the subject policies define the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The 2006-07 EMC UL policy further states the "accident" must be "neither expected or intended from the standpoint of the 'Insured.'"  The Oklahoma Supreme Court has stated as follows with respect to the meaning of "accident" in this context:

> [T]he words, "accident" and "accidental" have never acquired any technical meaning in law, and when used in an insurance contract, they are to be construed and considered according to common speech and common usage of people generally. ... by way of illustration, we quote from Webster's International Dictionary:
>
> "Accident. An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event, chance, contingency."
> " 'Accidental' means Happening by chance or unexpectedly, Undesigned, sudden and unexpected event, chance, contingency."
>
> *** It is an event from an unknown cause, or an unexpected event from a known cause. [Citation omitted]. An unusual and unexpected result, attending the performance of a usual or necessary act. [Citation omitted]. *United States Fidelity & Guaranty Co. v. Briscoe*, 205 Okla. 618, 621, 239 P.2d 754, 756–57 (1951).

In summary, "*Briscoe* emphasized that courts should construe the word, 'accident', according to its plain meaning." *Lutheran Benev. Ins. Co. v. Nat'l Catholic Risk Retention Grp., Inc.*, 939 F. Supp. 1506, 1510-11 (N.D. Okla. 1995).  Here, CED

alleged that the CUSTOM entities "transmitted by telephone facsimile machine a facsimile to [CED]" (¶11), that the CUSTOM entities created the faxed document that was "distributed to [CED] and other members of the class" (¶12), that CED had not invited or given permission to the CUSTOM entities to send the faxes (¶14), and that the CUSTOM entities faxed the same or similar facsimiles to others without permission or invitation (¶15).  [DN 71-7].  These allegations are incorporated into every count in the underlying complaint.

It does not appear that Oklahoma courts have ruled on the issue of whether allegedly sending an unsolicited fax to another constitutes an "accident" within the meaning of the "occurrence" definition.  The Plaintiffs submit it does not.  The act of creating a document and faxing that document to others cannot reasonably be characterized as an "accident."  Certain courts addressing this issue in other jurisdictions have recognized this proposition, and have ruled that an insured's actual or alleged transmission of unsolicited advertising faxes is not an "accident" and therefore is not an "occurrence."  See e.g. *State Farm Gen. Ins. Co. v. JT's Frames, Inc.*, 104 Cal. Rptr. 3d 573 (Cal. App. 4th 2010); *ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 53 Cal. Rptr. 3d 786 (2007); *Terra Nova Ins. Co. v. Fray-Witzer*, 449 Mass. 406, 869 N.E.2d 565 (Mass. 2007); *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631 (4th Cir. 2005); *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F.Supp.2d 488 (E.D. Penn. 2006), aff'd by 503 F.3d 399 (3d Cir.2007); *Maryland Cas. Co. v. Express Products, Inc.*, CIV.A. 09-857, 2011 WL 4402275 (E.D. Pa. Sept. 22, 2011) (not reported).  The Plaintiffs commend the logic of these decisions to this Court, and urge the

Court to rule that the underlying case did not seek damages that were caused by an "occurrence."

Furthermore, CED alleged that CUSTOM's transmission of the unwelcome faxes constituted the tort of conversion and violated the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"). Under Illinois law, conversion is an intentional tort that requires intentional conduct. See *Loman v. Freeman*, 229 Ill.2d 104, 890 N.E.2d 446 (Ill. 2008) (noting that the intentional tort of conversion requires that the defendant "engaged in an intentional, wrongful act"). Moreover, the ICFA provides relief from unfair competition and unfair or deceptive acts or practices which include "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealments, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact". See 815 ILCS 505/2. There is simply no reasonable way to characterize the alleged commission of an intentional tort, or the alleged commission of Consumer Fraud, as an "accident." For this additional reason, the "occurrence" requirement negates coverage for any "property damage" that could be at issue in the underlying case.

For all the reasons, the "property damage" provisions in the subject policies do not provide coverage for the claims alleged in the underlying case, and the underlying case did not create a duty to defend or indemnify under the subject policies.

2.   **No "personal and advertising injury", "personal injury" or "advertising injury" is alleged in the underlying case**

The Emcasco CGL policies and the 2007-08 EMC UL policy contain provisions

relating to "personal and advertising injury." The 2006-07 EMC UL policy contains similar provisions relating to "advertising injury" and "personal injury." These terms are defined in the subject policies to include a list of offenses for which the insured can, under certain circumstances, obtain coverage.[4] The definition of "personal and advertising injury," "advertising injury" and "personal injury" includes only one offense that is relevant here, which the policies describe as follows: "Oral or written publication, in any manner, of material that violates a person's right of privacy." CED claims the TCPA violations that are the subject of the underlying case come within the scope of this offense.

Oklahoma courts have not addressed the issue of whether TCPA violations constitutes "publication *** of material that violates a person's right of privacy" so as to be potentially covered under the "personal and advertising injury" provisions contained in a standard CGL insurance policy. Several courts in other jurisdictions have addressed that issue and they are split. The Plaintiffs submit that the cases which have held a TCPA claim is not a "personal and advertising injury" offense have decided the issue correctly.

Some examples of cases where the issue was decided correctly are as follows: *Telecommunications Network Design and Paradise Distributing, Inc. v. Bretheren Mutual Ins. Co.*, 5 A.3d 331 (Pa. Super. Ct. 2010); *State Farm General Ins. Co. v. JT's Frames, Inc.*, 104 Cal.Rptr.3d 573 (Cal.App.4th 2010); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543 (7th Cir. 2009) (construing Iowa law); *St. Paul Fire & Marine Ins. Co. v. Brother International Corp.*, 319 Fed.Appx. 121 (3d Cir. 2009)

---

[4] [DN 71-29, p.14, ¶14; DN 71-33, p.1; DN 71-35, p.16, ¶14].

13

(unpublished); *ACE Rent-A-Car, Inc. v. Empire Fire & Marine Ins. Co.*, 580 F.Supp.2d

678 (N.D. Ill. 2008) (construing Indiana law); *St. Paul Fire & Marine Ins. Co. v. Onvia,*

*Inc.*, 2007 WL 564075 (W.D. Wash. 2007) (not reported); *ACS Systems, Inc. v. St. Paul*

*Fire & Marine Ins. Co.*, 53 Cal. Rptr.3d 786 (Cal.App.4th 2007); *Melrose Hotel Co. v. St.*

*Paul Fire & Marine Ins. Co.*, 432 F.Supp.2d 488 (E.D. Penn. 2006); *Maryland Cas. Co.*

*v. Express Products, Inc.*, CIV.A. 09-857, 2011 WL 4402275 (E.D. Pa. Sept. 22, 2011)

(not reported); *Hartford Fire Ins. Co. v. Flagstaff Industries, Corp.*, 2012 WL 1669845

(N.D. Ohio 2012) (not reported).

The logic of these opinions is generally as follows.  There are two basic forms of

invasion of privacy claims, those that complain of a violation of the claimant's right to

seclusion and those that complain of a violation of the claimant's right to secrecy.  A

party's seclusion interest is based on the party's right to be left alone, while a party's

secrecy interest is based on the party's right to keep particular information confidential.

A TCPA claim is derivative of a party's seclusion interest (because unsolicited faxes do

not disclose the recipient's confidential information to others, they interfere with the

recipient's right to be left alone).  But the "invasion of privacy" offense listed in the

insurance policy covers claims based on the secrecy interest, <u>not</u> the seclusion interest.

The cited opinions reason that the invasion of privacy offense listed in the subject

policies does not include seclusion-based claims for a number of reasons.  They note that

businesses generally do not enjoy a common-law right to seclusion, which shows that the

"invasion of privacy" provision in commercial insurance policies was not intended to

cover seclusion interests.  They note that the "invasion of privacy" offense as defined in

the policies includes a "publication" requirement, which is relevant to the protection of secrecy interests, not publication interests. They note that the other similar offenses in the "personal and advertising injury" definition (including the offenses of libel, slander, misappropriation, and copyright infringement) all require the examination of the content of the offending advertisement, making it reasonable to infer that the "invasion of privacy" offense concerns harm based on the <u>content</u> of an advertisement (i.e. whether the content includes confidential material).

This is a logical analysis that is consistent with Oklahoma law. Like the courts cited above, Oklahoma courts have acknowledged that there are four distinct categories in the invasion of privacy, including the rights to seclusion and secrecy. See *McCormack v. Oklahoma Pub. Co.*, 613 P.2d 737, 739 (Okla. 1980); *LeFlore v. Reflections of Tulsa, Inc.*, 708 P.2d 1068, 1074 (Okla. 1985). CED alleged that the CUSTOM entities sent, by facsimile, unsolicited advertisements to CED and other class members. [DN 71-7, p. 3, ¶¶11-15]. CED alleged that this conduct interrupted CED's and the other class members' "privacy interests in being left alone". [DN 71-7, p. 6-7, ¶29]. There is no dispute that the claims in the underlying case were based on seclusion interests, not secrecy interests. And the subject policies do not provide coverage for an insured's violation of seclusion interests. For this reason, the Plaintiffs had no duty to defend the CUSTOM entities in the underlying case and have no duty to indemnify the CUSTOM entities for the Judgment.

3. **The Statutory Violation exclusion bars coverage**

All of the subject policies include an endorsement entitled "Exclusion – Violation

15

Of Statutes That Govern Emails, Fax, Phone Calls Or Other Methods Of Sending

Material Or Information."[5]  The endorsement contains an exclusion entitled "Distribution

of Material In Violation of Statutes (hereinafter "the Statutory Violation exclusion").

The Statutory Violation exclusion, as incorporated into each of the subject policies and

their different coverage sections, provides that the "insurance do not apply to ***"

"bodily injury", "property damage", "personal and advertising injury", "personal injury"

or "advertising injury":

> **\*\*\* arising directly or indirectly out of any action or omission that
> violates or is alleged to violate:**
>
> a.  **The Telephone Consumer Protection Act (TCPA), including any
> amendment of or addition to such law; or**
>
> b.  **The CAN-SPAM Act of 2003, including any amendment or
> addition to such law; or**
>
> c.  **Any statute, ordinance or regulation, other than the TCPA or
> CAN-SPAM Act of 2003, that prohibits or limits the sending,
> transmitting, communicating or distribution of material or
> information.**

The Plaintiffs' position is that the underlying case did not allege claims that were

even potentially within the scope of the coverage of the subject policies.  Even if the

Court disagrees with that position, it cannot reasonably be disputed that the Statutory

Violation exclusion eliminates the possibility that the subject policies provide coverage

for the claims asserted in the underlying case.  The Statutory Violation exclusion negates

coverage for any damages or penalties arising directly or indirectly out of any action or

omission that actually or allegedly violates the TCPA.  The only conduct the CUSTOM

---

[5] [DN 71-9, p. 29; DN 71-11, p. 26; DN 71-14, p. 9; DN 71-15, p. 29].

entities were sued for in the underlying case was conduct that allegedly violated the TCPA. The Judgment entered against the CUSTOM entities in the underlying case constitutes damages or penalties that are based on alleged violations of TCPA. Accordingly, the claims against the CUSTOM entities in the underlying case are entirely within the Statutory Violation exclusion and there is no possibility that any of the CUSTOM entities can obtain coverage under the subject policies for the claims asserted in the underlying case.

The Plaintiffs are unaware of any reported decisions issued by any court applying Oklahoma law that considers the Statutory Violation exclusion or a similar exclusion. Courts from other jurisdictions that have considered this issue have uniformly held that the Statutory Violation exclusion negates a carrier's potential duty to defend or indemnify an insured that is sued for violating the TCPA and/or related common law offenses. See e.g. *Oregon Mut. Ins. Co. v. Rain City Pizza, LLC*, 172 Wash.App. 1043 (Wash. App. 2013) (unpublished); *Collective Brands, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 2013 WL 66071 (D. Kan. 2013); *GM Sign, Inc. v. Auto-Owners Ins. Co.*, 2012 WL 4840592 (Mich. App. 2012) (unpublished). None of these cases constitute controlling authority for this Court, but the Plaintiffs submit they provide examples of the proper application of the Statutory Violation exclusion. Courts have also held that other similar endorsements that more generally bar coverage for violations of "communications statutes" negate coverage for the types of claims at issue in the underlying case. See e.g. *MDC Acquisition Co. v. North River Ins. Co.*, 898 F.Supp.2d 942, 954-955 (N.D. Ohio 2012); *Rick's Cabaret International, Inc. v. Indemnity Ins. Corp.*, 2012 WL 208606 (S.D.

Tex. 2012) (not reported).

Here, the CUSTOM entities were alleged to have faxed unsolicited advertisements in violation of the TCPA. All of the causes of action pled in the underlying complaint are based on this allegedly unlawful act. The settlement entered into by the CUSTOM entities and CED calculates the recovery in reference to the penalty provisions in the TCPA. Thus, the conduct alleged in the underlying case was wholly within the scope of the Statutory Violation exclusion, and the amounts to be paid under the settlement exclusion (to the extent they can even be considered "damages") are wholly within the scope of the exclusion. Thus, if the Court does not find in favor of the Plaintiffs' favor based on the proposition that no covered damages were sought in the underlying case, the Statutory Violation exclusion still dictates a ruling in the Plaintiffs' favor.

The *GM Sign* case is particularly persuasive here because it dealt with a situation where the same attorneys that represent CED here were seeking coverage for a remarkably similar underlying complaint that had also been filed in Illinois state court. Like the underlying complaint here, the underlying pleading in *GM Sign* purported to allege a class action for violations of the TCPA, the tort of conversion and violation of the Illinois Consumer Fraud Act. Like here, the plaintiffs in *GM Sign* sought to collect on these alleged claims from the CGL insurance policy issued to the insured. The policy at issue in *GM Sign* contained the Statutory Violation exclusion. The *GM Sign* court found the exclusion negated coverage as to all the causes of action against the insured finding that "all three causes of action, regardless of their labels, originate in or flow from the same [excluded] acts"). See *GM Sign*, 2012 WL 4840592, *4.

The same result is required here. The presence of the Statutory Violation exclusion in the subject policies means, as matter of law, that the Plaintiffs had no duty to defend the CUSTOM entities in the underlying case and that the Plaintiffs have no duty to indemnify any party in connection with the Judgment entered in the underlying case.

### 4.     Other exclusions apply to preclude coverage

#### a.     The Expected or Intended Injury Exclusion

The CGL Coverage Form in the Emcasco CGL policies and the CLU Coverage Form in the 2007-08 EMC UL policy contain an Expected or Intended Injury exclusion, which provides that coverage does not apply to "'property damage' expected or intended from the standpoint of the insured". [DN 71-29, p. 2; DN 71-35, p. 2]. The expected or intended injury exclusion is incorporated into the definition of "Occurrence" of the CLU Coverage Form in the 2006-07 EMC UL policy. [DN 71-31, p. 4].

When construing similar expected or intended injury exclusions, courts have held that the exclusion can apply when the insured performs a voluntary act and the natural, usual, and expected result occurs, meaning the alleged damages should have reasonably been anticipated by the insured. See *Massachusetts Bay Ins. Co. v. Gordon*, 708 F.Supp. 1232 (W.D. Okla. 1989). If the insured was consciously aware that the injuries were practically certain to be caused by his conduct, the injuries are considered "expected" from the standpoint of the insured and are excluded from coverage. While Oklahoma courts have not yet addressed whether the Expected or Intended Injury exclusion bars coverage for TCPA violations, certain courts addressing this issue have held that the act of issuing unsolicited facsimile advertisements in violation of the TCPA is intentional

and, as a result, any resulting "property damage" is excluded from coverage.  See e.g. *MDC Acquisition Co. v. North River Ins. Co.*, 2012 WL 4483793, \*8 (ND Ohio 2012)[6].

Here, the CUSTOM entities were accused of sending unsolicited faxes to numerous companies in violation of the TCPA.  The act of sending a fax is intentional and requires a conscious act.  Anybody that sends a fax to another necessarily expects and intends that the transmission of the fax will tie up the recipient's facsimile machine, and use the recipients' toner and paper (to print out the received fax).  Those consequences are unavoidable, and are known to any party that sends a fax.  Thus, to the extent that any supposed "property damage" was at issue in the underlying case (and the Plaintiffs deny that it was), that "property damage" would be excluded from coverage by operation of the Expected or Intended Injury exclusion.

### b.    The Knowing Violation of Rights of Another Exclusion

The subject policies exclude coverage for "personal and advertising injury" when it is "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict" the injury.  [DN 71-29, p.6; DN 71-33, p.1; DN 71-35, p.6].  If the Court accepts the premise that the underlying case potentially alleged an invasion of privacy claim based on the CUSTOM entities' violation of CED's (and the other class members') right to seclusion, the alleged invasion of privacy

---

[6] Citing *Auto–Owners Ins. Co. v. Websolv Computing, Inc.,* 580 F.3d 543, 551 (7th Cir. 2009); *St. Paul Fire & Marine Ins. Co. v. Bro. Int'l Corp.,* 319 Fed. Appx. 121, 126 (3d Cir.2009); *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.,* 432 F.Supp.2d 488, 509–12 (E.D. Pa. 2006), aff'd by 503 F.3d 399 (3d Cir.2007); *Resource Bankshare Corp. v. St. Paul Mercury Ins. Co.,* 407 F.3d 631, 637 (4th Cir.2005); *State Farm Gen. Ins. Co. v. JT's Frames, Inc.,* 104 Cal.Rptr.3d 573  (Cal. Ct. App. 2010).

necessarily was caused by the CUSTOM entities with the knowledge that their acts

would impair CED's (and the other class members') right to seclusion. Again, the

CUSTOM entities are alleged to have deliberately sent faxes to CED and the other class

members. That conduct, as alleged, necessarily means the CUSTOM entities knew they

were impairing the seclusion rights of CED and the other class members. There is no

allegation that that CUSTOM entities did not intend for the faxes to reach the class

members. The allegations demonstrate that CUSTOM entities necessarily knew they

were intruding on the seclusion interests (and the Plaintiffs dispute corporations have any

seclusion interests) of the alleged class members. For this reason, the Knowing Violation

exclusion would bar coverage for any "personal and advertising injury" that even

arguably was pled in the underlying case.

### 5.   Damages alleged in the underlying case are outside the effective period of the 2006-07 Emcasco CGL policy and the 2006-07 EMC UL policy

The subject policies contain provisions expressly stating that they only provide

coverage for "bodily injury" or "property damage" that occurs during their effective

periods [DN 71-9, p.14; DN 71-13, p.15] or to "personal and advertising injury" offenses

that were committed during their effective periods. [DN 71-9, p.19; DN 71-13, p.15].

The Judgment in the underlying case certified the following Class:

> All persons who **between February 1, 2008 and April 30, 2008** prior to
> the filing of this action, were sent telephone facsimile messages *** by or
> on behalf of Defendants ***. [DN 71-28, at p. 2, ¶2; and at p. 4, ¶B.]

The faxes referenced in the Judgment were sent between "between February 1,

2008 and April 30, 2008." The 2006-07 Emcasco CGL policy and the 2006-07 EMC UL

policy were effective between September 1, 2006 and September 1, 2007.  [DN 71-9; DN

71-13].  None of the allegedly offending conduct on which the Judgment is based took

place during the effective period of the 2006-07 Emcasco CGL policy and the 2006-07

EMC UL policy.  Thus, even if coverage could exist under any of the subject policies for

the underlying claims (and Plaintiffs deny any such coverage could exist), the 2006-07

policies are necessarily inapplicable to the Judgment.

**6.    TCPA statutory damages are punitive in nature and are not covered under the subject policies**

The Judgment entered in the underlying case found that, in violation of the TCPA,

"2,552 unsolicited faxed advertisements were sent on Defendants' behalf to 2,552

persons between February 1, 2008 and April 30, 2008" and imposed a penalty of

$1,276,000 ($500 per each fax that was sent).  [DN 71-28].

The Plaintiffs submit the $500 per fax assessment is a penalty that is punitive in

nature.  See *Kruse v. McKenna,* 178 P.3d 1198 (Colo. 2008); *U.S. Fax Law Center, Inc.*

*v. iHire, Inc.*, 362 F.Supp.2d 1248 (D.Colo. 2005), aff'd 476 F.3d 1112 (10th Cir. 2007).

The Plaintiffs recognize that some courts have determined that the penalties imposed

under the TCPA are not punitive in nature, but the Plaintiffs respectfully submit that view

is not consistent with Oklahoma law.  Under Oklahoma law, "punitive damages are

intended to punish the wrongdoers and to act as a deterrent to others to punish rather than

compensate." *Wagoner v. Bennett*, 1991 OK 70, 814 P.2d 476, 478 (Okla.1991) (citing

*Hamilton v. Amwar Petroleum Co., Inc.,* 1989 OK 15, 769 P.2d 146, 149 (Okla.1989).

Nobody could seriously contend that receiving an unwanted fax requires $500 in

compensatory damages.  The purpose of the $500 per fax fine is to deter the offending

conduct, which necessarily makes the fines punitive.

Under Oklahoma law, allowing an insured to pass along payment of punitive

damages to its insurance carrier is against public policy except in the very limited

circumstance of vicarious liability.  See *Dayton Hudson Corp. v. Am. Mut. Liab. Ins. Co.*,

621 P.2d 1155, 1160 (Okla.1980) (holding "Clearly the purpose of exemplary damages is

to punish and deter.  Allowing an insurance company to bear the financial impact

specifically intended for those guilty of 'oppression, fraud or malice' is to contravene the

very public policy we are charged to recognize and implement").  There were no claims

for vicarious liability asserted against the CUSTOM entities in the underlying case.  As a

matter of public policy therefore, the amounts assessed against the CUSTOM entities in

the Judgment are uninsurable.  For this additional reason, the Plaintiffs have no

obligation to indemnify for the amounts assessed in the Judgment.

7.   **In the Alternative, the class is made up of corporations and business entities that have no right to privacy**

Even if the Court accepts the premise that the underlying case potentially alleged

an invasion of privacy claim based on the CUSTOM entities' violation of the class

members' right to seclusion (and the Plaintiffs believe the Court should reject that

premise), the damages awarded to CED and the other corporate class members cannot

constitute damages for invasion of privacy, which means those damages were not

awarded for "personal and advertising injury."

The U.S. Supreme Court has repeatedly recognized that corporations are not

natural persons, and they have no right of privacy.  See *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357 (1950); *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 65, 94 S.Ct. 1494, 1519 (1974) (holding that "neither incorporated nor unincorporated associations can plead an unqualified right to conduct their affairs in secret"); *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 284, 109 S. Ct. 2909, 2925 (1989) (recognizing in concurring opinion that a corporation has no right to privacy); *FCC v. AT & T Inc.*, 131 S.Ct. 1177, 1179 (2011) (noting distinction between individual's right to privacy and corporation's right to privacy and finding that corporation has no personal right to privacy).

The TCPA allows for corporations to recover a penalty of $500 in instances when the corporation receives a fax in violation of the TCPA.  But that penalty, when paid to a corporation, cannot constitute a damage award for invasion of privacy, because a corporation does not <u>have</u> an actionable right of privacy.  Thus, however the $500 penalty is properly characterized when received by a corporation, for insurance purposes it is not a damage payment for "personal and advertising injury" (since it is not being paid in connection with "oral or written publication, in any manner, of material that violates a <u>person's</u> right of privacy").  See *S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.*, 112 Cal.Rptr.3d 40, 50 (Cal. Ct. App. 2010).

In the underlying case, CED provided the court with a list of the purported class members that were asserting a TCPA violation claim.  [See DN 71-24, DN 71-25, and DN 71-26].  This list was submitted as Exhibit M4B1 and M4B2 to the Affidavit of Richard G. Peitz which was attached as Exhibit M4 to CED's Motion For Preliminary

Approval Of Class Action Settlement And Notice To Class. [DN 71-17]. The list

indicates that only 66 of the class members are natural persons/individuals. The

remaining class members businesses (1134 are corporate entities and 1367 are non-

corporate business entities, including firms, associations, companies and other types of

businesses). To the extent that the Judgment is made up of payments to corporate entities

and/or business entities, and not to payments to natural individuals, the Judgment is not

covered under the subject policies. For this additional reason, the Plaintiffs are not

obligated to indemnify CED and/or the CUSTOM entities for the Judgment amount.

**8.      Additionally, CUSTOM is not "legally obligated to pay damages" in Judgment as required under Insuring Agreement**

The subject policies only provide coverage for "damages" that the insured is

"legally obligated to pay". [DN 71-9, p. 14; DN 71-11, p. 11; DN 71-13, p. 17, ¶12; DN

71-15, p. 28, ¶23]. The settlement agreement that the CUSTOM entities entered into with

CED provides in relevant part as follows:

> 5.      Covenant Not to Execute. Plaintiff and Class agree not to seek to
> execute against, attach, lien or otherwise seek to acquire any interest in any
> of the property or assets of Defendants [the Custom entities], whether now
> existing or hereafter arising, except for and other than proceeds from
> Defendants' insurance policies to satisfy or recover any portion of the
> Judgment, and agree to seek recovery to satisfy the Judgment only against
> Defendants' insurers and under the insurance policies issued to Defendants.
> Plaintiff and the Class agree not to execute against Defendants' non-
> insurance assets, even if a determination is made that Defendants' insurance
> carriers do not owe coverage or indemnity for the claims made in the
> Litigation. Except with respect to the proceeds from Defendants' insurance
> policies set forth in this section 5, the Judgment shall be nonrecourse in all
> respects against all non-insurance assets of Defendants, whether now
> existing or hereafter arising.
> [DN. 71-18, p. 5-6].

The Judgment order entered by the court in the underlying case accepted the settlement agreement and specifically decreed that CED and the class had covenanted with the CUSTOM entities consistent with the settlement agreement.  [DN 71-28, p. 7-8, ¶M].  Thus, according to the settlement agreement and the judgment entered by the court in the underlying case, the CUSTOM entities are under no legal obligation to ever pay damages to CED and the class members.

The Plaintiffs' potential indemnity obligations under the subject policies cannot arise until CUSTOM is "legally obligated to pay damages" to a third-party.  See e.g. *Lida Mfg. Co., Inc. v. U.S. Fire Ins. Co.*, 448 S.E.2d 854, 857 (N.C. Ct. App. 1994) (finding that "when an insurance policy contains language such as 'legally obligated to pay,' an insurer has no obligation to an injured party where the insured is protected by a covenant not to execute").  Here, the CUSTOM entities are protected by a covenant not to execute and therefore are not legally obligated to pay damages to CED or the class, which means the Plaintiffs can have no indemnity obligation.  For this additional reason, the Plaintiffs are not obligated to pay any portion of the Judgment in the underlying case.

## C.    CMEOW and CME do not qualify as "insureds" on the subject policies

CMEOW and CME are not the same legal entity as CUSTOM.  CUSTOM is or was an Oklahoma corporation that maintains its principal place of business in Ponca City, Oklahoma.  [DN 71, p. 2, ¶4].  According to the publicly available records maintained by the Oklahoma Secretary of State as of the date the Plaintiffs filed the Complaint for Declaratory Judgment, CUSTOM's corporate status was "OTC Suspension".  [DN 71, p. 2, ¶4].

According to the records maintained by the Wisconsin Department of Financial Institutions, CME filed an amendment to its articles of organization on October 6, 2004 and changed its name to "CUSTOM MECHANICAL EQUIPMENT OF WISCONSIN LLC" and that entity was organized as a limited liability company under the laws of the state of Wisconsin.  [DN 71, p. 2, ¶5].  See also DN 71-1, which is a certified copy of a document maintained by the Wisconsin Department of Financial Institutions.  Certified copies of public records are self-authenticating and therefore admissible under the Federal Rules of Evidence.  See Fed. R. Evid. 902; *United States v. Garcia*, 71 Fed. Appx 781, 783 (10th Cir. 2003) (unpublished) (certified copies of public records are self-authenticating under Fed.R.Evid. 902(4)).  Additionally, this Court can take judicial notice of a certified public record.  *See* Fed.R.Evid. 201(d) (stating that "[a] court shall take judicial notice if requested by a party and supplied with the necessary information."); *Vista Exploration Co. v. Mewbourne Oil Co.*, CIV-10-213-C, 2010 WL 1980196, *2 n. 3 (W.D. Okla. May 17, 2010) (unpublished) ("Fed.R.Evid. 201(b) provides that judicial notice is appropriate where the fact is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' A certified public record kept by the Secretary of State is clearly such a source, and the Court is therefore required to take judicial notice in this situation").

According to the records maintained by the Wisconsin Department of Financial Institutions, CMEOW filed Articles of Dissolution with the Department effective December 6, 2005.  See DN 71-2, a certified document entitled "Certificate of Status" obtained from Wisconsin Department of Financial Institutions.  Thus, the available public

records from the Wisconsin Department of Financial Institutions indicate that the CME and CMEOW are the same entity and that this entity was dissolved in December 2005. However, CMEOW and CME were designated as separate entities in the underlying case. If CMEOW and CME are actually separate entities, each entity was a limited liability company organized under the laws of the state of Wisconsin.

The subject policies were issued to CUSTOM. CMEOW and CME are not "insureds" on the subject policies. As a result, independent from all the arguments set forth above, the Plaintiffs necessarily never had any coverage obligations to CMEOW and CME in the underlying case, and CMEOW and CME had no rights under the subject policies they could assign to CED. Accordingly, the subject policies are inapplicable to the claims asserted and settled in the underlying case with respect to CMEOW and CME.

## IV.   CONCLUSION

WHEREFORE, Plaintiffs-Counter Defendants, EMPLOYERS MUTUAL CASUALTY COMPANY and EMCASCO INSURANCE COMPANY, respectfully request that this Court grant their motion for summary judgment on Counts I, II, III and V of the Amended Complaint for Declaratory Judgment against CUSTOM MECHANICAL EQUIPMENT, INC., CUSTOM MECHANICAL EQUIPMENT OF WISCONSIN LLC, CUSTOM MECHANICAL EQUIPMENT LLC, and CE DESIGN, LTD.

Submitted this 19th day of June, 2013.

/s/ Kristina M. Beck
Brian A. O'Gallagher
Kristina M. Beck
CREMER, SPINA,
SHAUGHNESSY, JANSEN & SIEGERT, LLC

One North Franklin St, 10th Floor
Chicago, Illinois 60606
Phone: 312-726-3800
Fax: 312-726-3818

Chrisopher D. Wolek
GIBBS, ARMSTRONG, BOROCHOFF,
MULLICAN, & HART, P.C.
500 Petroleum Club Building
601 South Boulder, Suite 500
Tulsa, OK 74119
Phone: 918-587-3939
Fax: 918-582-5504

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all attorneys of record.

/s/  Kristina M. Beck
Brian A. O'Gallagher
Kristina M. Beck
CREMER, SPINA,
SHAUGHNESSY, JANSEN & SIEGERT, LLC
One North Franklin St, 10th Floor
Chicago, Illinois 60606
Phone: 312-726-3800
Fax: 312-726-3818

314-347/doc#298107