# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

EMCASCO INSURANCE COMPANY )
and EMPLOYERS MUTUAL )
CASUALTY COMPANY, )
                               )
     Plaintiffs, )
                               )
v. )     Case No. CIV-11-1494-M
                               )
CUSTOM MECHANICAL )
EQUIPMENT, INC., CUSTOM )
MECHANICAL EQUIPMENT OF )
WISCONSIN, LLC, CUSTOM )
MECHANICAL EQUIPMENT, LLC )
and CE DESIGN LTD., )
                               )
     Defendants, )
                               )
and )
                               )
CE DESIGN LTD., )
                               )
     Defendant/Counter-Plaintiff, )
                               )
v. )
                               )
EMCASCO INSURANCE COMPANY )
and EMPLOYERS MUTUAL )
CASUALTY COMPANY, )
                               )
     Plaintiffs/Counter-Defendants. )

## ORDER

Before the Court are Plaintiffs/Counter-Defendants'[1] ("plaintiffs") Motion for Summary Judgment and Brief in Support, filed June 19, 2013, and Defendant/Counter-Plaintiff CE Design LTD.'s ("defendant") Motion and Brief in Support of Summary Judgment, filed June 20, 2013.

---

[1] Plaintiffs are comprised of Emcasco Insurance Company ("EMCASCO") and Employers Mutual Casualty Company ("EMC") and are insurance carriers licensed to issue policies of commercial general liability insurance and commercial umbrella liability policies in the states of Iowa and Oklahoma.

On July 11, 2013, plaintiffs responded to defendant's Motion for Summary Judgment, and on July 12, 2013, defendant responded to plaintiffs' Motion for Summary Judgment. Based upon the parties' submissions, the Court makes its determination.

I.   Introduction

Plaintiffs filed this declaratory action seeking judgment on the availability of insurance coverage under certain policies of insurance issued to Custom Mechanical Equipment, Inc. ("Custom").[2] EMCASCO issued the following Commercial General Liability ("CGL") insurance policies to Custom: (1) Policy no. 3D1-73-91-07, effective September 1, 2006-07; and (2) Policy no. 3D1-73-91-08, effective September 1, 2007-08. EMC issued Commercial Liability Umbrella Policy No. 3J1-73-91-08 to Custom for the effective periods of September 1, 2006-07 ("2006-07 EMC UL") and September 1, 2007-08 ("2007-08 EMC UL").[3] Amended Complaint for Declaratory Judgment ¶¶ 17-21.

On or around November 10, 2010, defendant filed a lawsuit[4] ("underlying case") in the Circuit Court of Cook County, Illinois challenging Custom, CMEOW and CME's ("Custom

---

[2] According to records on file with the Oklahoma Secretary of State, Custom Mechanical Equipment, Inc. is or was an Oklahoma corporation that maintains its principle place of business in Ponca City, Oklahoma. At the time plaintiffs filed this action, Custom's corporate status was "OTC" Suspension. According to the records of the Wisconsin Department of Financial Institution, Custom Mechanical Equipment LLC ("CME") filed an amendment to its articles of organization on October 6, 2004, and changed its name to Custom Mechanical Equipment of Wisconsin LLC ("CMEOW") and was organized as a limited liability company under the laws of Wisconsin. According to public records from the Wisconsin Department of Financial Institutions, CME and CMEOW are the same entity and were dissolved in December 2005. As of the date plaintiffs filed this complaint, CMEOW/CME has maintained its principal place of business in Ponca City, Oklahoma. Amended Complaint for Declaratory Judgment ¶¶ 4-7.

[3] Collectively the EMCASCO CGL insurance policies and EMC issued Commercial Umbrella Liability policies will be known as the "subject policies".

[4] *C.E. Design, LTD., an Illinois corporation, individually and as the representative of a class of similarly-situated persons v. Custom Mechanical Equipment, Inc.; Custom Mechanical*

Entities") practice of faxing unsolicited advertisements. Amended Complaint for Declaratory Judgment Ex. A at 1. In the underlying case, defendant alleged that on April 18, 2008, the Custom Entities sent a telephone facsimile to defendant as well as sent similar telephone facsimiles to other recipients without having permission to do so. Amended Complaint for Declaratory Judgment ¶ 23. Defendant asserted claims in the underlying case against the Custom Entities for violation of the Telephone Consumer Protection Act ("TCPA"), common law conversion, and violation of the Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA").[5] Amended Complaint for Declaratory Judgment ¶ 24.

On or about June 8, 2011, defendant and the Custom Entities filed a Motion for Preliminary Approval of Class Settlement Agreement and Notice to the class in the underlying case. In their motion, the parties informed the court they were agreeing to a settlement in favor of the plaintiff and the class for $1,276,000[6], which was enforceable only against the proceeds of the Custom Entities' insurance policies. Amended Complaint for Declaratory Judgment ¶ 29. On June 23, 2011, the court in the underlying case entered an Order Preliminarily Approving the Class Action Settlement, and Approving the Class Action Settlement Notice, and on September 19, 2011, entered the Final Approval of Settlement and Judgment. Plaintiffs' Motion for

---

*Equipment of Wisconsin, LLC, and Custom Mechanical Equipment, LLC,* Case No. 08 CH 17478. Amended Complaint for Declaratory Judgment ¶ 22.

[5] In the underlying case, defendant sought certification of three separate classes, one for each theory of recovery. Amended Complaint for Declaratory Judgment ¶ 26.

[6] The TCPA assesses $500.00 in damages for each violation. Between February 1, 2008 and April 30, 2008, 2,552 unsolicited faxes were sent in violation of the TCPA by the Custom Entities. Amended Complaint for Declaratory Judgment, Ex. O at 6 ¶ H. The settlement amount is calculated by multiplying the 2,552 unsolicited faxes sent by $500 for each violation.

Summary Judgment ¶ 5 at 3. Judgment was entered against the Custom Entities in the amount of $1,276,000.00.[7]

## II. Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

## III. Discussion

---

[7] The court in the underlying case entered judgment on Counts I (Violation of TCPA), II (conversion), and III (Violation of the ICFA) against the Custom Entities jointly and severally in the total amount of $1,276,000.00. Amended Complaint for Declaratory Judgment, Ex. O at 6 ¶ G. According to the settlement agreement in the underlying case "all of [the] Custom [Entities]'s rights under (1) the EMCASCO CGL policies, (2) the 2006-07 EMC UL policy, and (3) the 2007 – 08 EMC UL policy, as those policies relate to the underlying case, were assigned to CE Design." Amended Complaint for Declaratory Judgment ¶ 45.

In this declaratory action, both parties agree that Oklahoma law applies to the subject policies.[8] The proper construction of an insurance contract is a question of law. *Nat'l Am. Ins. Co. v. Am. Re-Ins. Co.,* 358 F.3d 736, 740 (10th Cir. 2004). The Tenth Circuit has summarized the rules governing insurance contract construction and interpretation as follows:

> In Oklahoma, unambiguous insurance contracts are construed, as are other contracts, according to their terms. The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law. Insurance contracts are ambiguous only if they are susceptible to two constructions. In interpreting an insurance contract, this Court will not make a better contract by altering a term for a party's benefit. *Max True Plastering Co. v. U.S. Fidelity & Guar. Co.,* 912 P.2d 861, 869 (Okla.1996) (footnotes omitted). In interpreting contracts, courts must view the document as a whole so as to give effect to every part of the contract and enable each clause to help interpret the others. Okla. Stat. Ann. tit. 15, § 157.

*Id.*

A.  Plaintiffs' Coverage Obligations to Defendant

Plaintiffs contend that CMEOW and CME do not qualify as "insureds" on the subject policies. Specifically, plaintiffs assert that CMEOW and CME are not the same legal entity as Custom and that the subject policies were issued to Custom. As a result, plaintiffs contend that they "necessarily never had any coverage obligations to CMEOW and CME in the underlying case." Plaintiffs' Motion for Summary Judgment at 28. The Court finds that it is irrelevant whether plaintiffs have coverage obligations to CME or CMEOW. The court in the underlying case entered judgment "on Counts I, II, and III of the First Amended Class Action Complaint against the Custom Entities, jointly and severally, in the total amount of $1,276,000.00."

---

[8] In their Motion for Summary Judgment, plaintiffs acknowledge that the "interpretation of the subject policies at issue in this case is governed by Oklahoma law." Plaintiffs' Motion for Summary Judgment at 5. Defendant asserts in its Joint Memorandum of Law in Support of its Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a) [docket no. 107-1] that Oklahoma law applies to this insurance coverage action. Plaintiffs' Motion for Summary Judgment Ex. 1 at 10.

Amended Complaint for Declaratory Judgment Ex. O at 6 ¶ G. The court in the underlying case further found that,

> The Judgment shall be satisfied only through the proceeds of Defendants' insurance policies and against Defendants' insurers.

Amended Complaint for Declaratory Judgment Ex. O at 6 ¶ G. The court in the underlying case found the Custom Entities jointly and severally liable, and Custom assigned its rights under the subject policies to defendant. As a result, due to the joint and several liability judgment, if plaintiffs are found to be responsible to indemnify defendant on behalf of Custom, plaintiffs would be responsible for the entire amount.

### B. Plaintiffs' Duty to Defend

The Oklahoma Supreme Court summarized the principles of an insurer's duty to defend and indemnify in *First Bank of Turley v. Fid. and Deposit Ins. Co. of Maryland*, 928 P.2d 298, (Okla. 1996).

> A liability insurance policy generally contains two basic duties-the duty to defend and the duty to indemnify its insured. . . .The duty to defend is separate from, and broader than the duty to indemnify, but the insurer's obligation is not unlimited.

*Id.* at 302. "An insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to the potential of liability under the policy." *Id.* at 303. Further, the court said:

> The insurer's defense duty is determined on the basis of information gleamed from the petition (and other pleadings), from the insured and from other sources available to the insurer at the time the defense is demanded (or tendered) rather than by the outcome of the third-party action.
>
> An insurer who disputes the insured's demand to defend has three options. It can (1) seek declaratory relief that would define the insurer's rights and obligations; (2) defend the insured under a

reservation of rights, or (3) refuse to take any action at the peril of being later found in breach of its duty to defend.

*Id*. In this case, plaintiffs exercised option three and refused to take any action when defense was demanded in the underlying case. Plaintiffs' actions were well within the law, and plaintiffs are now not estopped from raising defenses to indemnity if the Court finds they had a duty to defend.[9]

In Counts I, II, and III[10] of their Amended Complaint for Declaratory Judgment, plaintiffs assert that the subject policies do not provide coverage for the claims asserted in the underlying case. Plaintiffs contend that the EMCASCO CGL Policy no. 3D1-73-91-08 effective September 1, 2007-08 ("EMCASCO CGL 2007-08") and the 2007-08 EMC UL policy do not provide coverage for the claims asserted in the underlying case because the Statutory Violation Exclusion

---

[9] In its Motion and Brief in Support of Summary Judgment and Brief in Opposition to Plaintiffs' Motion for Summary Judgment, defendant asserts:
> When an insured tenders an action to its insurer, seeking a defense to an action pending in Illinois courts, the insurer may not abandon the insured simply because it believes the policy does not provide coverage from the claim. *See Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill.2d 127 (1999). Rather, insurer must take one of two actions: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. *Id*. at 150. Because Emcasco neither defended nor filed a declaratory judgment action during the pendency of the [u]nderlying [a]ction, it is now estopped from raising defense to indemnity if the Court finds that it had a duty to defend.

Defendant's Motion and Brief in Support of Summary Judgment at 25. However, both parties have already conceded that Oklahoma not Illinois law applies to the subject policies. The Court, therefore, will apply Oklahoma law to determine whether plaintiffs' refusal to provide defense in the underlying case was appropriate.

[10] Count I of plaintiffs' complaint alleges that the EMCASCO CGL Policies do not provide coverage for the claims asserted in the underlying case. Count II alleges that the 2006-07 EMC UL policy does not provide coverage for the claims asserted in the underlying case. Count III alleges that the 2007-08 EMC UL policy does not provide coverage for the claims asserted in the underlying case. The Court finds that EMCASCO Policy no. 3D1-73-91-07 effective September 1, 2006-07 and EMC UL policy issued September 1, 2006-07 do not provide coverage for the claims asserted in the underlying case because these policies were not in effect when the claims in the underlying case occurred.

7

endorsement, found in both the EMCASCO effective policy and the 2007-08 EMC UL policy, bars any coverage.[11] Defendant, in both its Motion and Brief in Support of Summary Judgment and its brief in opposition to plaintiffs' Motion for Summary Judgment, contends that absent the Statutory Violation Exclusion coverage exists for all the claims in the underlying suit and that the Statutory Violation Exclusion does not apply to Count II (conversion) and Count III (violation of the ICFA) of the underlying case. Defendant specifically asserts that coverage exists in the subject policies as to the property damage and the advertising injury that occurred as a result of the Custom Entities sending unsolicited faxes. Plaintiffs assert that even if property damage and/or an advertising injury occurred, there would still be no coverage because of the Statutory Violation Exclusion endorsement added to both policies which excludes coverage if there is a violation of the TCPA.

The court in the underlying case entered judgment on all three Counts of the First Amended Class Action Complaint against the Custom Entities and Count I of the Complaint was an alleged violation of the TCPA. The Statutory Violation Exclusion found in the subject policies is unambiguous and "specifically excludes acts pertaining to 'bodily injury', 'property damage', or 'personal and advertising injury' arising directly or indirectly out of any action or

---

[11] Both the EMCASCO CGL 2007-08 and 2007-08 EMC UL policies contain an endorsement that excludes coverage for violation of statutes that govern emails, fax, phone calls, or other methods of sending material or information. This endorsement specifically excludes acts pertaining to "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
  a. The Telephone Consumer Protection Act (TCPA), including any amendment or addition to such law; or
  b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or
  c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating, or distribution of materials or information.

Amended Complaint for Declaratory Judgment Ex. Q & W.

omission that violates or is alleged to violate . . . [t]he . . . TCPA." Amended Complaint for Declaratory Judgment Ex. Q & W. The Court finds that as a matter of law, because of the alleged TCPA violation, plaintiffs had no duty to defend as to Count I (TCPA Violation) of the underlying case.

Defendant contends that the conversion and ICFA claims alleged in the underlying case were independent of the TCPA violation and triggered a duty for plaintiffs to defend. Plaintiffs contend that the conversion and ICFA claims are barred by the Statutory Violation Exclusion and further assert that, "even if the Statutory Violation Exclusion is not considered, the conversion and ICFA claims did not trigger a duty to defend." Plaintiffs' Opposition to Defendant's Motion for Summary Judgment at 7. Plaintiffs contend that conversion is an intentional tort and "under Oklahoma law, the alleged commission of conversion cannot be an 'occurrence,'[12] and any damages allegedly caused by conversion are within the scope of the Expected or Intended Injury exclusion."[13] Plaintiffs' Opposition to Defendant's Motion for Summary Judgment at 7. Defendant contends that the Custom Entities damaged defendant's fax machines by converting defendant's paper and toner to send the unsolicited faxes. Plaintiffs assert that in order for there to be coverage for property damage, the damage must be caused by an accidental occurrence.

In order to establish a conversion claim, a plaintiff must satisfy the following three elements:

---

[12] Occurrence is defined in the subject policies as:
  **Occurrence** – means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
Amended Complaint for Declaratory Judgment Ex. P & V.

[13] The subject policies exclude coverage for:
  **Expected or Intended injury** – "bodily injury" or "property damage" expected or intended from the standpoint of the insured.
Amended Complaint for Declaratory Judgment Ex. P & V.

> (1) [W]hether [the plaintiff] was the owner of the property in dispute, (2) whether [the defendant] intentionally diverted the [property] for his own personal benefit; and (3) if the former two elements are established, the amount of damages suffered by [the plaintiff].

*Harmon v. Cradduck*, 2012 OK 80, 286 P.3d 643, 649 (Okla. 2012). The Court finds that since the second element of conversion requires an intentional diversion of property (i.e. using defendant's paper and toner to print the Custom Entities' unsolicited faxes), and the court in the underlying case entered judgment against the Custom Entities as to Count II (conversion), as a matter of law, plaintiffs had no duty to defend Count II (conversion) of the underlying case because the "Expected or Intended Injury" exclusion within the subject policies excluded coverage for claims of conversion.

Additionally, plaintiffs contend that they did not have a duty to defend the ICFA claim alleged in the underlying case, because despite it being barred by the Statutory Violation Exclusion, coverage would also be denied based on the "Expected or Intended Injury" exclusion or the "Knowing Violation of Rights of Another[14]" exclusion included within the subject policies. Five elements must be proven to state a claim for an ICFA violation:

> (1) [A] deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception.

---

[14] The subject policies exclude coverage for:
**Knowing Violation of Rights of Another – "**Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another would inflict "personal and advertising injury."
Amended Complaint for Declaratory Judgment Ex. P & V.

*Dubey v. Public Storage, Inc.*, 395 Ill. App. 3d 342, 353 (Ill. App. 2009). Since the second element of an ICFA claim requires the defendant to intend for the plaintiff to rely on the deceptive act, this intended act would exclude the ICFA claim from coverage. Since the court in the underlying case entered judgment against the Custom Entities for Count III (Violation of the ICFA), the Court finds that, as of matter of law, the ICFA claim in the underlying case did not trigger a duty for plaintiffs to defend the underlying case.

IV. Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS Plaintiffs' Motion for Summary Judgment and Brief in Support [docket no. 107] and DENIES Defendant's Motion and Brief in Support of Summary Judgment [docket 108].

**IT IS SO ORDERED this 18th day of February, 2014.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE